UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

GLEN MATTHEWS JR.,

    Plaintiff,

  v.

SPECIALIZED LOAN SERVICING, LLC, *et al.*,

    Defendants.

Case No.: CV ED 20-00307-CJC(SPx)

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [Dkt. 19] AND GRANTING DEFENDANTS' MOTIONS TO DISMISS [Dkts. 17, 21]**

## I. INTRODUCTION

Plaintiff Glen Matthews Jr. brings this action against Defendants Specialized Loan Servicing, LLC ("SLS") and OCWEN Loan Servicing, LLC ("Ocwen"). (Dkt. 10 [First Amended Complaint, hereinafter "FAC"].) Before the Court are three motions. The first is Plaintiff's motion to remand, which argues that this action should be remanded to San

Bernardino Superior Court for lack of subject matter jurisdiction. (Dkt. 19 [hereinafter "Remand Mot."].) The second and third are motions to dismiss filed by each Defendant which argue that Plaintiff has failed to state a claim. (Dkt. 17 [hereinafter "Ocwen MTD"][1]; Dkt. 21 [hereinafter "SLS MTD"].) For the following reasons, Plaintiff's motion to remand is **DENIED**, and Defendants' motions to dismiss are **GRANTED**.[2]

## II. BACKGROUND

The FAC alleges the following facts. Plaintiff owns a home located at 1050 La Roda Court in Ontario, California. (FAC ¶ 1.) In 2006, Homecomings Financial, LLC ("HFL") approached Plaintiff about refinancing his mortgage. (*Id.* ¶ 7.) Plaintiff eventually refinanced by entering into two deeds of trust secured by his home. The first was for $396,000 ("the first loan") and the second was for $49,500 ("the second loan"). (*Id.* ¶ 8.) Defendant SLS acquired the rights and responsibilities to each loan from HFL soon after they were made. (*Id.* ¶ 10.) And at some point after that, Defendant Ocwen acquired the second loan from SLS. (*Id.* ¶ 12.)

Plaintiff lost his job in 2012 and both loans fell into default. (*Id.* ¶ 13.) He then contacted SLS and Ocwen about his options for curing the defaults. (*Id.*) Eventually, he reached an Ocwen representative who "verbally informed him [Ocwen was] going to charge off his second trust deed loan and reconvey the Deed of Trust ('DOT') back to him." (*Id.* ¶ 14.) Based on that conversation, Plaintiff believed that all of his obligations on the second loan were extinguished. (*Id.*) He had no further contact with Ocwen in the wake of the conversation. (*Id.* ¶ 16.) Plaintiff soon found another job and was able to

---

[1] PHH Mortgage Corporation ("PHH), the Successor by Merger to Ocwen Loan Servicing, is the entity that filed the instant motion to dismiss. (Ocwen MTD.) For the sake of clarity, the Court will continue to refer to it as "Ocwen's Motion."

[2] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for April 20, 2020, at 1:30 p.m. is hereby vacated and off calendar.

cure the default on the first loan. (*Id.* ¶ 15.) He appears to have been current on it ever since.

On April 16, 2019, Plaintiff received a default notice and an intent to foreclose letter from SLS informing him that the second loan was in default. (*Id.* ¶ 18.) Apparently, at some point after his 2013 conversation, Ocwen transferred the second loan to SLS instead of charging it off and transferring it back to Plaintiff. (*Id.* ¶ 17.) Plaintiff informed SLS of his prior communications with Ocwen and his belief that Ocwen had charged off the loan. (*Id.* ¶ 20.) SLS then reviewed Plaintiff's loan notes and told him that Ocwen had never charged off the loan. (*Id.* ¶ 21.)

In October 2019, Plaintiff spoke with SLS again about saving his home from foreclosure and requested a loan modification. (*Id.* ¶ 23.) SLS told him that he could not apply for a loan modification because SLS had already analyzed his home's value and the balance of the outstanding loan and determined that he would not qualify. (*Id.*) Plaintiff received two letters from SLS in late October denying his request for modification even though he never formally applied for one. (*Id.* ¶ 25.) Plaintiff contacted SLS and inquired why he received a denial despite never filling out a written application. (*Id.* ¶ 26.) Eventually, Plaintiff did submit a written a loan modification application in order to "protect his interests," but SLS denied it in late November 2019. (*Id.* ¶ 29.) The FAC does not include information regarding the current status of SLS's foreclosure proceedings.

Plaintiff filed this action in San Bernardino County Superior Court on December 18, 2019. (Dkt. 1-1.) The original Complaint asserted nine causes of action—seven under California state law and two under federal law for violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601. (*Id.*) Defendants removed the action to this Court asserting

both federal question jurisdiction and diversity jurisdiction.  (Dkt. 1 [Notice of Removal, hereinafter "NOR"].)  Plaintiff responded by filing the operative FAC.  Though based on identical conduct as the original Complaint, the FAC omits the two federal claims.  (*See generally* FAC.)  Instead, it asserts claims for (1) negligence, (2) breach of contract, (3) violation of California's Unfair Competition Law, (4) violation of the California Homeowner's Bill of Rights, (5) promissory estoppel, (6) breach of the implied covenant of good faith and fair dealing, and (7) tortious breach of the implied covenant of good faith and fair dealing.  (*Id.*)  The three pending motions followed.

### III.  MOTION TO REMAND

#### A.  Legal Standard

 "Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotations omitted).  A civil action brought in state court may only be removed by the defendant to a federal district court if the action could have been brought there originally.  28 U.S.C. § 1441(a).  When a case is removed, the burden of establishing subject matter jurisdiction falls on the defendant, and the removal statute is strictly construed against removal jurisdiction.  *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).  "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Id.*

When a defendant initially removes a case, it must submit only a "short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  And when the basis for removal is diversity jurisdiction, the amount in controversy allegation in the removal notice "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574

U.S. 81, 89 (2014).  However, if the plaintiff contests, or the court questions, the defendant's allegations, evidence establishing the amount is required.  *See id.*; 28 U.S.C. § 1446(c)(2)(B).

    **B.**    **Analysis**

Plaintiff seeks to remand this action to San Bernardino Superior Court for lack of subject matter jurisdiction.  The parties primarily dispute the import of Plaintiff filing an amended pleading that omits the federal claims asserted in the original complaint.  The Court finds that this issue is largely beside the point, however, because the Notice of Removal asserts both federal question and diversity as bases for federal jurisdiction.[3]  (NOR ¶ 7.)  If diversity jurisdiction is present, then the dismissal of Plaintiff's federal claims would be of little matter because the Court would have an alternative basis for jurisdiction and no grounds to remand the action.  *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (finding that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" and may "decline to exercise their jurisdiction, [only in] exceptional circumstances" (internal quotations omitted)).  Accordingly, the Court must determine whether it in fact has diversity jurisdiction over the case.

Federal courts have diversity jurisdiction where there is complete diversity between the parties and the amount in controversy exceeds $75,000.  28 U.S.C.

---

[3] If the lone basis for removal was federal question jurisdiction, the Court could decline to exercise supplemental jurisdiction over the remaining state law claims after Plaintiff abandoned the federal claims asserted in the original Complaint.  *See Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 977 (9th Cir. 2006) ("Any post-removal pleadings must be treated just as they would be in a case originally filed in federal court."); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (holding that normally, consideration of judicial economy, convenience, fairness, and comity "will point toward declining to exercise jurisdiction over the remaining state-law claims" in instances where the federal claims are dismissed prior to trial).

§ 1332(a). The amount in controversy is the total "amount at stake in the underlying litigation." *Theis Research, Inc. v. Brown & Bain*, 400 F.3d 659, 662 (9th Cir. 2005). In measuring the amount in controversy, courts assume the allegations in the complaint are true and that the jury will return a verdict in favor of the plaintiff on all claims. *See Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002); *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) (directing courts to first look to the complaint in determining the amount in controversy). A removing defendant has the burden to "prove that the amount in controversy . . . exceeds the jurisdictional threshold by a preponderance of the evidence." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018).

The parties do not dispute that they are completely diverse. The Notice of Removal asserts that for diversity purposes, Plaintiff is a citizen of California while both SLS and Ocwen are citizens of Delaware. (NOR ¶¶ 3–5.) Plaintiff does not dispute those assertions. Thus, the success of Plaintiff's motion to remand hinges on whether his Complaint placed over $75,000 in controversy.

Plaintiff contends that Defendants have failed to meet their burden of establishing the amount in controversy because the relief he seeks in this case is limited in scope. According to Plaintiff, the only relief he seeks is a short delay in the foreclosure proceedings so that SLS can reassess his loan modification application. (Remand Mot. at 9–11.) But this argument ignores Plaintiff's breach of contract claim. That claim alleges that in 2013, Plaintiff had a conversation with Ocwen during which an Ocwen representative "verbally informed him they were going to charge off his second trust deed loan and reconvey the DOT back to him." (FAC ¶ 41.) Ocwen never followed through on this agreement and, instead of charging off the loan, transferred it to SLS. (*Id.* ¶ 42.)


This claim places over $75,000 in controversy on its own. Damages in breach of contract actions "give the injured party the benefit of his bargain" by placing him "in the same position he would have been in had the promisor performed the contract." *See Coughlin v. Blair*, 41 Cal. 2d 587, 603 (1953); *New West Charter Middle Sch. v. L.A. Unified Sch. Dist.*, 187 Cal. App. 4th 831, 844 (2010) ("Contract damages compensate a plaintiff for its lost expectation interest."). In this case, Plaintiff alleges that he formed an oral contract with Ocwen in 2013 when Ocwen told him that it would charge off his loan and reconvey the deed of trust to him. (FAC ¶ 41.) Per the terms of the alleged oral contract, the benefit of Plaintiff's bargain is the complete rescission of his obligations on the second loan. By alleging the existence of such a contract, Plaintiff has placed the entire second loan amount in controversy. And because Plaintiff now owes over $100,000 on the second loan, if Plaintiff were to succeed on this claim, the pecuniary result to Defendants would exceed the jurisdictional threshold. *See In re Ford Motor Co./Citibank (S. Dakota), N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) ("The test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce.").

Plaintiff's breach of contract claim sets this case apart from those cited in his motion to remand. In those cases, the only relief plaintiffs sought was a temporary delay of foreclosure proceedings. *See, e.g.*, *Cross v. Home Loan Mortg. Corp.*, 2011 WL 2784417, at *3 (C.D. Cal. July 15, 2011) (determining that amount in controversy had not been satisfied because "Plaintiffs merely seek to temporarily enjoin [Defendant] from foreclosing on their property until it complies with certain procedural requirements"). And none of them contained a breach of contract claim seeking to rescind a loan in its entirety. *See Landa v. Flagstar Bank, FSB*, 2010 WL 2772629, at *2 (S.D. Cal. July 13, 2010) (remanding case for lack of diversity jurisdiction because "[u]nlike many mortgage foreclosure cases, Plaintiffs do not seek to rescind the loan"). Because Plaintiff's breach of contract claim *does* seek a complete rescission of his second loan, the Court is satisfied

that Defendants have met their burden of establishing that the amount in controversy exceeds $75,000. Accordingly, it has diversity jurisdiction, and Plaintiff's motion to remand is **DENIED.**

**IV. MOTIONS TO DISMISS**

**A.    Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994). The district court may also consider additional facts in materials of which the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled in part on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while

a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations.  *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

### B.    Analysis

#### a)    Negligence

Plaintiff first asserts a negligence claim which alleges that SLS was negligent in conducting Plaintiff's loan modification review.  (FAC ¶ 39.)  Although this claim is asserted against both Defendants, the allegations underlying this claim stem entirely from 2019 and do no appear to involve Ocwen whatsoever.  (*See id.* ¶¶ 33–39.)  Accordingly, Ocwen's motion to dismiss this claim is **GRANTED**.[4]

SLS contends that Plaintiff's negligence claim fails as a matter of law because it did not owe a tort duty to Plaintiff during the loan modification process.  The Court agrees.  As a general rule, a financial institution owes no duty of care to a borrower when

---

[4] It is unclear whether Plaintiff intended to allege that Ocwen acted negligently in 2013 when one of its employees allegedly told him that Ocwen would charge off his loan but then failed to do so.  If these allegations were part of the claim, the result would be no different.  Indeed, if the negligence claim against Ocwen was premised on this 2013 conversation, it would be barred by the statute of limitations. *See* Cal. Civ. Code § 340.5; *So v. Shin*, 212 Cal. App. 4th 652, 662 (2013) ("The limitations period for a cause of action for professional negligence . . . is [] one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury.").

it does not "exceed the scope of its conventional role" as a lender. *See Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 945 (2014). In light of this principle, most courts addressing the question have held that a lender does not owe a duty to a borrower who applies for a loan modification. *See, e.g.*, *Armstrong v. Chevy Chase Bank, FSB*, 2012 WL 4747165, at *4 (N.D. Cal. Oct. 3, 2012) (explaining that "at its core," a loan modification "is an attempt by a money lender to salvage a troubled loan" and does not involve the lender exceeding its conventional role); *Darsow v. Wells Fargo Bank, N.A.*, 2019 WL 6391520, at *5 (C.D. Cal. Sept. 3, 2019) (dismissing negligence claim against lender because "lenders owe borrowers no duty of care when considering a loan modification application"); *Griffin v. Green Tree Serv., LLC*, 166 F. Supp. 3d 1030, 1048 (C.D. Cal. 2015) (same).

Most recently, a California Court of Appeal addressed this exact question and held that a "lender does not owe a borrower a tort duty of care during a loan modification negotiation" because "economic losses flowing from a financial transaction gone awry are primarily the domain of contract and warranty law . . . rather than of negligence." *Sheen v. Wells Fargo Bank, N.A.*, 38 Cal. App. 5th 346, 352 (2019) (internal citations omitted). The Ninth Circuit has reached the same conclusion. *See Badame v. J.P. Morgan Chase Bank, N.A.*, 641 Fed. Appx. 707, 710 (9th Cir. 2016) ("Chase did not owe Plaintiffs a duty of care when considering their loan modification application because a loan modification is the renegotiation of loan terms, which falls squarely within the scope of a lending institution's conventional role as a lender of money.").

Plaintiff has not offered any reason for the Court to depart from this well-established line of cases. Accordingly, the Court finds that SLS cannot be held liable in tort for the alleged negligence that occurred during Plaintiff's loan modification application process. SLS's motion to dismiss Plaintiff's negligence claim is **GRANTED.**

If a Rule 12(b)(6) motion is granted, a "district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" such that granting leave would be futile. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (internal quotation omitted). Because Plaintiff's negligence claim against SLS stems exclusively from its conduct during the loan modification process and SLS did not owe a duty to Plaintiff at that time, granting Plaintiff leave to amend this claim would be futile. Accordingly, Plaintiff's negligence claim is **DISMISSED WITH PREJUDICE.**

### b) Breach of Contract

Plaintiff's next claim is for breach of contract. Though confusingly pled against "All Defendants," this claim concerns only Plaintiff's 2013 conversation with an Ocwen representative. (FAC ¶¶ 40–48.) Because Plaintiff does not allege that SLS had any role in the conduct underlying this claim, SLS's motion to dismiss this claim against it is **GRANTED.**

As discussed above, Plaintiff's breach of contract claim alleges that in 2013, he spoke with an Ocwen representative who told him that Ocwen was charging off his loan and reconveying the Deed of Trust to him. (FAC ¶ 41.) He alleges that an oral contract was formed during this conversation, and Ocwen breached this contract when it did not charge off his loan and reconvey the Deed to Trust to him. (*Id.* ¶ 47.) Ocwen contends that this claim is barred by the statute of frauds and the statute of limitations. The Court agrees.

Under the statute of frauds, any agreement pertaining to "the sale of real property, or of an interest therein" is invalid unless it is memorialized in writing and signed by the party to be charged. Cal. Civ. Code § 1624(a)(3); *Secrest v. Sec. Nat. Mortg. Loan Tr.*,

167 Cal. App. 4th 544, 552 ("A contract coming within the statute of frauds is invalid unless it is memorialized by a writing subscribed by the party to be charged or by the party's agent."). A mortgage or deed of trust is subject to the statute of frauds. *Id.* § 2992; *Granadino v. Wells Fargo Bank, N.A.*, 236 Cal. App. 4th 411, 415–16 (2015). And an agreement that modifies a contract subject to the statute of frauds—like the one at issue here—is similarly subject to the statute of frauds. *See* Cal Civ. Code § 1698(c).

The oral contract alleged in the FAC concerns Plaintiff's deed of trust and was never reduced to writing. Accordingly, the statute of frauds applies and precludes Plaintiff from stating a breach of contract claim premised on his oral exchange with Ocwen. *See Justo v. Indymac Bancorp*, 2010 WL 623715, at *7 (C.D. Cal. Feb. 19, 2010) (dismissing a breach of contract claim as barred by the statute of frauds because it was premised on an oral contract to modify plaintiff's mortgage loan and cancel a foreclosure sale). Instead of arguing that the statute of frauds does not apply at all, Plaintiff contends that the Court should apply a rarely-utilized exception to it. According to Plaintiff, the Court should not permit Ocwen to use the statute of frauds as a defense because it has "the power to apply equitable principles to prevent a party from using the statute of frauds where such use would constitute fraud." *Juran v. Epstein*, 23 Cal. App. 4th 882, 895 (1994). This principle is inapplicable here, however, because Plaintiff has not alleged that any fraudulent conduct occurred. *See* Fed. R. Civ. P. 9(b).

Moreover, even if the statute of frauds did not apply, Plaintiff's breach of contract claim would be barred by the statute of limitations. The statute of limitations for breach of oral contract claims is two years. *See* Cal. Civ. Code § 339(1). Plaintiff alleges that Ocwen breached the alleged oral agreement in 2013 and when it did not charge off his loan or reconvey the Deed to Trust to him. (FAC ¶ 41.) However, over six years elapsed between that breach and Plaintiff filing suit. In an attempt to cure this glaring statute of limitations problem, Plaintiff relies on the "discovery rule." This rule provides that the

limitations period "shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party." Cal. Civ. Code § 339(1).  Plaintiff asserts that because he did not discover Ocwen's alleged breach until 2019, his claim is timely.  The Court disagrees.

The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, *or has reason to discover*, the cause of action." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005) (emphasis added).  A plaintiff "has reason to discover a cause of action when he or she has reason at least to suspect a factual basis for its elements." *Id.* (quoting *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 394 (1999)).  To invoke the delayed discovery rule, a complaint must allege (1) the time and manner of discovery and (2) facts showing that plaintiff could not have discovered its injuries earlier despite reasonable diligence. *Id.* at 808.  Even at the pleading stage, a plaintiff bears the burden of showing diligence. *Id.*

Plaintiff alleges that in 2013, Ocwen orally promised him that it would charge off his remaining debt on the second loan and reconvey the Deed of Trust to him.  Thus, he had reason to discover that Ocwen breached this alleged promise in the following weeks or months when he did not receive the Deed of Trust or any confirmation that his loan had been charged off.  Plaintiff's failure to take any follow-up action regarding this crucial conversation for approximately six years precludes him from taking advantage of the discovery rule now.  He has done nothing to show that he was diligent and could not have discovered Ocwen's alleged breach during the intervening years.  In light of this fatal defect, granting Plaintiff leave to amend this claim would be futile.  Accordingly, it is **DISMISSED WITH PREJUDICE.**

//

//

          c)      **UCL Claim**

Plaintiff's next claim alleges that SLS violated California's Unfair Competition Law ("UCL") by conducting its loan modification review before Plaintiff provided it with all of his financial information. (FAC ¶ 53.) He alleges that by prematurely determining that he was ineligible for modification, SLS acted in bad faith. (*Id.*) But Plaintiff has failed to adequately allege standing to sue under the UCL.

The remedies available under the UCL are limited and "prevailing plaintiffs are generally limited to injunctive relief and restitution." *Zhang v. Superior Court*, 57 Cal. 4th 364, 370 (2013). To have standing, UCL plaintiffs must allege that they have suffered losses capable of being redressed by these remedies. Thus, "[a] plaintiff suffers an injury in fact for purposes of standing under the UCL when he or she has: (1) expended money due to the defendant's acts of unfair competition; (2) lost money or property; or (3) been denied money to which he or she has a cognizable claim." *Hall v. Time Inc.*, 158 Cal. App. 4th 847, 854 (2008).

Plaintiff fails to allege that he has experienced any of these injuries. Instead, he includes only boilerplate allegations that he "suffered economic damages." (FAC ¶ 82.) Even at the pleading stage, this conclusory assertion is insufficient to establish standing under the UCL. Plaintiff's home has not yet been foreclosed on, so he has not lost property. *See Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1188 (N.D. Cal. 2012) ("Because Plaintiff has failed to plausibly allege that she lost her home as a result of Defendant's actions, the Court dismisses the UCL claim for lack of standing."). And crucially, he fails to allege that he has made any payments to SLS that could be recovered in restitution. *Cf. Zeppeiro v. Green Tree Servicing, LLC*, 2015 WL 12660398, at *11 (C.D. Cal. Apr. 15, 2015) ("The fact that [Plaintiff] does not allege that he paid defendants any of the additional arrearages, late fees, foreclosure fees, or interest charges

. . . makes his UCL claim deficient."). Because this particular deficiency could be cured with additional facts and because Plaintiff has requests leave to amend, this claim is **DISMISSED WITH FOURTEEN DAYS LEAVE TO AMEND.**

          d)        Violation of Homeowner's Bill of Rights

Plaintiff next alleges that SLS violated a provision of the Homeowner's Bill of Rights ("HBOR") by failing to adequately explain its reasons for denying his modification application. (FAC ¶ 60.) The provision in question obligates "the mortgage servicer [to] send a written notice to the borrower identifying the reasons for denial," and "[i]f the denial was based on investor disallowance, the specific reasons for the investor disallowance." *See* Cal. Civ. Code § 2923.6(f). Plaintiff alleges that SLS violated this provision by not providing him with "any concrete information as to how SLS determined" that he was ineligible for modification. (Dkt. 24 [Plaintiff's Opposition to Motion to Dismiss] at 20.) SLS counters that its explanation—which informed Plaintiff that he was ineligible for modification because it could not create an affordable payment plan for him—was adequate. The Court need not analyze the adequacy of SLS's explanation, however, because Plaintiff's section 2923.6 claim fails for a more fundamental reason.

Section 2924.15 of the California Civil Code provides that section 2923.6 "shall apply only to *first lien* mortgages or deeds of trust that are secured by owner-occupied residential real property." (emphasis added). But the loan Plaintiff sought to modify was his second loan. (FAC ¶ 18.) Accordingly, section 2923.6 does not apply and this claim must be dismissed. *See Manson v. Guar. Bank*, 2017 WL 1094079, at *2 (S.D. Cal. Mar. 23, 2017) ("The HBOR by its plain terms does not apply to second lien loans."); *Rijhwani v. Wells Fargo Home Mortg., Inc.*, 2015 WL 3466608, at *19 (N.D. Cal. May 30, 2015) (granting lender's motion for summary judgment on plaintiff's section 2923.6

claim because "those HBOR provisions do not apply to foreclosures on junior liens"); *Stephens v. World Sav. Bank*, 2013 WL 664615, at *7 (N.D. Cal. Feb. 22, 2013) (holding that "the specific code sections that Plaintiffs contend in this application that Defendants violated [including section 29.23.6] . . . do not apply to the second deed of trust at issue here" because "these codes section[s] apply only to first lien mortgages or deeds of trust"). Due to this fatal defect, the Court finds that granting Plaintiff leave to amend this claim would be futile. Accordingly, it is **DISMISSED WITH PREJUDICE.**

### e) Promissory Estoppel

Plaintiff next asserts a promissory estoppel claim against both Defendants. Again, this claim concerns his 2013 conversation with Ocwen and does not allege any involvement by SLS. Accordingly, SLS's motion to dismiss this claim is **GRANTED.**

Under California law, the elements of a claim for promissory estoppel are: (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) that is both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance. *See U.S. Ecology, Inc. v. California*, 129 Cal. App. 4th 887, 901–02 (2005). Ocwen first contends that, like Plaintiff's breach of contract claim, his promissory estoppel claim is barred by the statute of frauds. The Court disagrees. Under California law, the statute of frauds is not a valid defense to a promissory estoppel claim. *See Garcia v. World Savings, FSB*, 183 Cal. App. 4th 1031, 1040 n. 10 (2010) ("To the extent appellants' claim is premised on promissory estoppel, neither section 1698 nor the statute of frauds will defeat their claim.").

Nonetheless, this claim suffers from the same flaw as Plaintiff's breach of contract claim regarding the statute of limitations. Like breach of oral contract claims, the statute of limitations for promissory estoppel based on oral promises is two years. *See Newport*

*Harbor Ventures, LLC v. Morris Cerullo World Evangelism*, 6 Cal. App. 5th 1207, 1224 (2016). And because Plaintiff should have discovered the factual basis for this claim in 2013, he cannot take advantage of the discovery rule. Accordingly, Ocwen's motion to dismiss this claim is **GRANTED.** Plaintiff's promissory estoppel claim is **DISMISSED WITH PREJUDICE.**

### f) Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff next asserts a claim for breach of the implied covenant of good faith and fair dealing against both Defendants. This claim alleges that Ocwen violated the implied covenant by refusing to charge off his loan after orally promising to do so and that SLS violated it by failing to conduct a good faith loan modification review. "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000). "Simply stated, the burden imposed [by the implied covenant] is that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (1990) (internal quotation omitted).

Plaintiff has failed to state an implied covenant claim against either Defendant. To the extent Plaintiff's implied covenant claim is based on Ocwen's failure to honor its oral promise to charge off his loan and reconvey the Deed of Trust, it is barred by the statute of limitations for the same reasons as his breach of contract claim. *See* Cal. Civ. Code § 339(1); *Dufour v. Allen*, 2015 WL 8783264, at *2 (C.D. Cal. Dec. 14, 2015) "The statute of limitations for commencing . . . for breach of the implied covenant of good faith and fair dealing, is two years if the contract is oral and four years if the contract is written."). And to the extent it is based on SLS's failure to conduct a good faith loan

modification, it is deficient in that it does not allege which specific contractual provision SLS violated.  *See McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 955 (N.D. Cal. 2012) ("To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must identify the specific contractual provision that was frustrated."); *Griffin*, 166 F. Supp. 3d at 1048 ("In order to state a claim for breach of an implied covenant of good faith and fair dealing, the specific contractual obligation from which the implied covenant of good faith and fair dealing arose must be alleged.").  More details are needed before this claim can go forward.  Accordingly, Defendants' motions are **GRANTED** as to this claim.  Because the deficiencies in this claim could possibly be cured with more specific facts, Plaintiff's implied covenant claim against SLS is **DISMISSED WITH FOURTEEN DAYS LEAVE TO AMEND.**  The claim against Ocwen is **DISMISSED WITH PREJUDICE.**

### g) Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing

Finally, the Complaint asserts a claim for tortious breach of the implied covenant of good faith and fair dealing against both Defendants.  This claim is largely devoid of factual underpinnings but appears to allege that Defendants tortiously breached the implied covenant by failing to provide Plaintiff with "statements, interest rate adjustment information, account history, [and] disclosure of fees."  (FAC ¶ 87.)  This claim also fails to state a claim.

Generally, no cause of action for tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a "special relationship" with "fiduciary characteristics."  *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002).  Thus, the tort remedy for breach of the implied covenant is largely limited to insurance cases where courts have found that a "special relationship"

exists between insurers and insureds.  *See Careau*, 222 Cal. App. 3d at 1395 ("It seems clear to us that the recognition of a tort remedy for a breach of the implied covenant in a noninsurance contract has little authoritative support.").  In light of this rule, courts have routinely dismissed tortious breach of the implied covenant claims that, like this one, arise outside of the insurance context.  *See, e.g.*, *Sutherland v. Barclays American/Mortg. Corp.*, 53 Cal. App. 4th 299, 314 (1997); *Manlin v. Ocwen Loan Servicing, LLC*, 2017 WL 8181141, at *5 (C.D. Cal. Aug. 1, 2017).  Plaintiff has offered no legal support for his position that a loan servicer can be liable in tort for failing to provide documents to a borrower.  In light of this, the Court finds that granting him leave to amend this claim would be futile.  It is **DISMISSED WITH PREJUDICE.**

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is **DENIED.**  Plaintiff's claims for negligence, breach of contract, violation of section 2923.6 of the Homeowner's Bill of Rights, promissory estoppel, breach of the implied covenant claim against Ocwen, and tortious breach of the implied covenant of good faith and fair dealing, are **DISMISSED WITH PREJUDICE.**  Plaintiff's claims against SLS for unfair competition and breach of the implied covenant of good faith and fair dealing claim are **DISMISSED WITH FOURTEEN DAYS' LEAVE TO AMEND**.

DATED:     April 15, 2020

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE